# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MASONITE CORPORATION, et al.,[1] | Case No. 09-10844 (PJW) |
| Debtors. | Jointly Administered |
| | Hearing Date: April 13, 2009 at 3:30 p.m. ET |
| | Objection Deadline: April 6, 2009 at 4:00 p.m. ET |

## APPLICATION OF MASONITE CORPORATION, ET AL. FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PERELLA WEINBERG PARTNERS LP AS INVESTMENT BANKER AND FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

Masonite Corporation and its affiliates, as debtors and debtors in possession (collectively, the "Masonite Debtors"), file this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Masonite Debtors to employ and retain Perella Weinberg Partners LP ("PWP") as its investment banker and financial advisor *nunc pro tunc* to the date of commencement of these chapter 11 cases. In support of this Application, the Masonite Debtors submit the Declaration of Michael A. Kramer, a Partner of PWP (the "Kramer Declaration"), a copy of which is attached hereto as **Exhibit B** and incorporated by reference herein. In further support of this Application, the Masonite Debtors respectfully state as follows.

---

[1] The Masonite Debtors, together with the last four digits of each Masonite Debtor's federal tax identification number, are: Masonite Corporation (8020); Premdor Finance LLC (4966); Eger Properties (6847); WMW, Inc. (3326); Woodlands Millwork I, Ltd. (5989); Masonite Primeboard, Inc. (5752); Masonite Corporation Foreign Holdings Ltd. (0667); Masonite Holding Company Limited (3243); Florida Made Door Co. (7960); Cutting Edge Tooling, Inc. (8818); Pintu Acquisition Company, Inc. (7932); Masonite Air LLC (N/A); Door Installation Specialist Corporation (2354); Masonite Holding Corporation (N/A); Masonite International Inc. (N/A); and Masonite International Corporation (7314). The Masonite Debtors' principal executive offices are located in Mississauga, Ontario and Tampa, Florida and the service address for all Masonite Debtors is: One N. Dale Mabry Highway, Suite 950, Tampa, Florida 33609.

## Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of the Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Relief Requested

4. The Masonite Debtors seek to employ and retain PWP pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) to perform financial advisory and investment banking services for the Masonite Debtors in the chapter 11 cases upon the terms and conditions contained in that certain engagement letter, dated as of April 25, 2008, and in that certain revised engagement letter, dated as of September 25, 2008, by and between PWP and Masonite International Inc. and each of its direct and indirect subsidiaries (such letters, together with all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to as the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C** and incorporated by reference herein.

## Background

5. On March 16, 2009 (the "Petition Date"), the Masonite Debtors (together with their non-debtors affiliates, "Masonite") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Masonite Debtors continue to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed a chapter 11 trustee or an official committee of unsecured creditors in the chapter 11 cases.

6. Simultaneously with the commencement of the chapter 11 cases, three of the Masonite Debtors, Masonite Holding Corporation, Masonite International Inc., and Masonite International Corporation, and four of their Canadian affiliates (the "CCAA Applicants") sought relief under the Companies' Creditors Arrangement Act in the Ontario Superior Court of Justice (the "Canadian Court") in Toronto, Ontario, Canada.[2] Masonite Holding Corporation, Masonite International Inc., and Masonite International Corporation have sought Bankruptcy and Canadian Court approval of a customary cross-border protocol that will govern procedures for, among other things, Court-to-Court communications and obtaining approval (by joint hearing or otherwise) for matters requiring approval by both Courts.

7. Masonite's principal executive offices are located in Mississauga, Ontario and Tampa, Florida. Masonite employs approximately 8,500 people worldwide, including approximately 4,450 people in the United States and Canada. In 2008, Masonite's worldwide sales revenue totaled $1.82 billion. Masonite's sales of interior and entry door products accounted for approximately 71% and 29% of 2008 sales revenue, respectively. In 2008, Masonite's United States and Canadian operations generated approximately $1.18 billion in revenue (65% of Masonite's total 2008 sales revenue) and Masonite's European and rest of world operations generated approximately $640 million in revenue (35% of Masonite's total

---

[2] The CCAA Applicants include: Masonite Holding Corporation; Masonite International Inc.; Masonite International Corporation; Crown Door Corporation; Castlegate Entry Systems Inc.; 3061275 Nova Scotia Company; and Rochman Universal Doors Inc.

3

2008 sales revenue). Masonite's adjusted EBITDA for 2008 was $162.4 million. As of December 31, 2008, the book value of Masonite's assets totaled approximately $1.6 billion and its liabilities totaled $2.7 billion.

### PWP's Qualifications

8.  PWP is a financial services firm providing corporate advisory and asset management services to clients around the world. Today, PWP and its affiliates has 38 partners and over 200 employees recruited from a wide variety of leading financial institutions in its offices in London, England, New York, New York, San Francisco, California, Austin, Texas, and Stamford, Connecticut. PWP's corporate advisory practice is focused on providing clients advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice works with both public and private companies. Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations. In addition, PWP has an affiliated asset management business which offers multiple investment vehicles focused on alternative investment products.

9.  The Masonite Debtors have selected PWP as their investment banker and financial advisor based upon, among other things: (a) the Masonite Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the Masonite Debtors' restructuring activities and (b) the extensive experience and excellent reputation of PWP's professionals in providing financial advisory and investment banking services in complex chapter 11 cases.

10.  On April 25, 2008 (the "Engagement Date"), the Masonite Debtors engaged PWP to provide general investment banking and financial advice in connection with the Masonite Debtors' attempts to complete a strategic restructuring, reorganization, and/or recapitalization and, if necessary, to prepare for the commencement of these chapter 11 cases.

11. In providing prepetition services to the Masonite Debtors in connection with these matters, PWP's professionals have worked closely with the Masonite Debtors' management and other professionals and have become well-acquainted with the Masonite Debtors' operations, debt structure, creditors, businesses, and operations and related matters. Accordingly, PWP has developed significant relevant experience and expertise regarding the Masonite Debtors that will assist PWP in providing effective and efficient services in the chapter 11 cases.

12. In addition to PWP's understanding of the Masonite Debtors' financial history, business operations, and the industry in which the Masonite Debtors operate, PWP and its professionals have extensive experience in the reorganization and restructuring of troubled companies both in and out of court. PWP's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations.

13. The professionals of PWP have been employed as financial advisors and as investment bankers in a number of troubled company situations, including the chapter 11 cases of Calpine Corporation, Allegiance Telecom Inc., Delta Air Lines Inc., Maxxim Medical, Solutia Inc., Pierre Foods, Inc. and Tropicana Entertainment, LLC.

14. With its experienced senior professionals, PWP fulfills a critical role that complements the services offered by the Masonite Debtors' other restructuring professionals. The Masonite Debtors believe they require the services of a capable and experienced investment banking and financial advisory firm such as PWP because, among other reasons, PWP's resources and capabilities, together with its prepetition experience advising the Masonite Debtors, are crucial to the Masonite Debtors' success in the chapter 11 cases.

## Services to Be Provided[3]

15. The financial advisory and investment banking services provided by PWP shall include the following:

    a. to the extent it deems necessary, appropriate and feasible, further familiarize itself with the business, operations, properties, financial condition, and prospects of the Masonite Debtors;

    b. review the Masonite Debtors' financial condition and outlook;

    c. assist in the development of financial data and presentations to the Masonite Debtors' Board of Directors, various creditors, and other parties;

    d. analyze the Masonite Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

    e. evaluate the Masonite Debtors' debt capacity and alternative capital structures;

    f. participate in negotiations among the Masonite Debtors and their creditors, suppliers, lessors, and other interested parties with respect to any of the transactions contemplated by the Engagement Letter;

    g. advise the Masonite Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

    h. provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any of the transactions contemplated by the Engagement Letter, as requested and mutually agreed;

    i. analyze various Restructuring[4] scenarios and the potential impact of these scenarios on the value of the Masonite Debtors and the recoveries of those stakeholders impacted by the Restructuring;

---

[3] Capitalized terms used in this summary and the summary regarding professional compensation below but not otherwise defined herein shall have the meanings set forth in the Engagement Letter. This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

[4] For purposes of the Engagement Letter, "Restructuring" means any recapitalization or restructuring of the Masonite Debtors' equity and/or debt securities and/or other indebtedness, obligations, or liabilities (including, if applicable, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to any repurchase, exchange, conversion, cancellation, forgiveness, retirement, plan, solicitation of consents, waivers, acceptances, authorizations, and/or a material modification or amendment to the terms, conditions or covenants thereof.

j.  provide strategic advice with regard to restructuring or refinancing the Masonite Debtors' obligations;

k.  value securities offered by the Masonite Debtors in connection with a Restructuring;

l.  provide financial advice and assistance to the Masonite Debtors in developing a Restructuring;

m.  if requested by the Masonite Debtors, in connection therewith, provide financial advice and assistance to the Masonite Debtors in structuring any new securities to be issued under a Restructuring; and

n.  if requested by the Masonite Debtors, assist the Masonite Debtors and/or participate in negotiations with entities or groups affected by the Restructuring.

16. In addition, PWP will provide such additional investment banking and financial advisory services in connection with the engagement as the Masonite Debtors may reasonably request from time to time.

### Professional Compensation

17. PWP's decision to continue with this engagement to advise and assist the Masonite Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

18. PWP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Further, because the Masonite Debtors are seeking to retain PWP under

section 328(a) of the Bankruptcy Code, the Masonite Debtors believe that PWP's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

19. In summary, the Fee Structure provides for the following compensation to PWP:

   a. a monthly financial advisory fee of $200,000 (the "Monthly Fee"), commencing on the Engagement Date and payable in advance on each monthly anniversary of the Engagement Date, with the first Monthly Fee due upon the execution of the Engagement Letter;

   b. a Restructuring Fee in the amount of $8,000,000, payable promptly upon consummation of a Restructuring;

   c. PWP will be entitled to the Restructuring Fee set forth above in the event that at any time prior to the expiration of nine months after the termination or expiration of PWP's engagement hereunder (the "Tail Period") a Restructuring is consummated on terms similar to those negotiated by PWP; provided that if PWP terminates the Agreement without cause, or the Masonite Debtors terminate the Agreement with justifiable cause, the provisions of this sentence shall not apply.

20. The Fee Structure is consistent with and typical of compensation arrangements entered into by PWP and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Fee Structure to be paid to PWP and the reasonableness of such compensation, the Masonite Debtors compared PWP's fee proposal to other proposals received by the Masonite Debtors in the selection process. After such comparison, the Masonite Debtors believe, as does PWP, that the Fee Structure is in fact reasonable, market-based, and designed to compensate fairly PWP for its work and to cover fixed and routine overhead expenses.

21. PWP's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Masonite Debtors during the term of PWP's engagement, were all important factors in determining the Fee Structure. The Masonite Debtors believe that the

ultimate benefit of PWP's services hereunder cannot be measured by reference to the number of hours to be expended by PWP's professionals in the performance of such services. Indeed, the Masonite Debtors and PWP have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of PWP and its professionals in connection with the chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for PWP and (b) the actual time and commitment required of PWP and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for PWP.

22. Prior to the Petition Date, the Masonite Debtors paid to PWP $1,887,931 for investment banking and financial advisory services and separately reimbursed PWP for $69,121 in expenses incurred since the Masonite Debtors' engagement of PWP. Any portion of this payment not used to pay and reimburse PWP for its prepetition fees and expenses will be detailed in PWP's first interim fee application, and such portion shall be credited towards PWP's postpetition fees and expenses as allowed by the Court. PWP has received no other compensation from the Masonite Debtors pursuant to the Engagement Letter. As of the Petition Date, PWP did not hold a prepetition claim against the Masonite Debtors for services rendered in connection with the engagement.

### Termination of Engagement

23. PWP's engagement may be terminated by the Masonite Debtors or PWP with or without cause at any time upon 15 days written notice and without liability or continuing obligation to the Masonite Debtors or PWP, except that following such termination and any expiration of the Engagement Letter, PWP shall remain entitled to payment of fees accrued but not yet paid prior to such termination or expiration and to reimbursement of incurred expenses.

### Indemnification and Contribution Provisions

24. The Masonite Debtors have agreed to indemnify and to make certain contributions to PWP in accordance with the indemnification provisions set forth in the Engagement Letter and attachments thereto (collectively, the "Indemnification Provisions").

25. The Indemnification Provisions are customary for financial advisors and investment bankers such as PWP for proceedings both out of court and in chapter 11. The Indemnification Provisions were fully negotiated between the Masonite Debtors and PWP at arms-length and the Masonite Debtors respectfully submit that the Indemnification Provisions, viewed in conjunction with the other terms of PWP's proposed retention, are reasonable and in the best interests of the Masonite Debtors, their estates, and their creditors.

### No Duplication of Services

26. The Masonite Debtors intend that the services of PWP will complement, and not duplicate, the services to be rendered by Alvarez and Marsal North America, LLC or any other professional retained in the chapter 11 cases. PWP understands that the Masonite Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Masonite Debtors.

### PWP's Disinterestedness

27. PWP has reviewed its internal electronic databases and, to the best of the Masonite Debtors' knowledge and except to the extent disclosed herein and in the Kramer Declaration, PWP: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Masonite Debtors' estates; and (c) has no connection to the Masonite Debtors, their creditors, or their related

parties.[5] To the extent that PWP discovers any new relevant facts or relationships bearing on the matters described herein during the period of PWP's retention, PWP will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Basis for Relief

I. **Section 328 of the Bankruptcy Code Permits the Employment and Retention of PWP on Terms Substantially Similar to Those in the Engagement Letter.**

28. The Masonite Debtors seek approval of the Engagement Letter and Fee Structure contained therein pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis ...." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may

---

[5] As discussed in the Kramer Declaration, PWP ran conflict searches on all the noteholder parties to the Restructuring and Lock-up Agreement (the "Restructuring Agreement"). As required by the confidentiality restrictions contained in the Restructuring Agreement, the Masonite Debtors have not disclosed publicly the identities of the parties to the Restructuring Agreement, including the results of the conflicts search with respect to such parties. The Masonite Debtors, however, will provide such information to the U.S. Trustee concurrently with the filing of this Application and to any other interested party that requests such information, subject to an appropriate confidentiality agreement.

11

avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

29. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed or percentage fee basis, or on a contingent fee basis</u>.

See 11 U.S.C. § 328(a) (emphasis added). Section 328(a) of the Bankruptcy Code, as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fee basis such as the Fee Structure proposed by the Masonite Debtors herein.

30. As set forth above, notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, PWP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter.

31. The Masonite Debtors believe that the Fee Structure reflects appropriately the nature and scope of services to be provided by PWP, PWP's substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by PWP and other leading investment banks and financial advisors that do not bill their clients on an hourly basis.

32. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this district.[6] See, e.g., In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (order authorizing retention of Lazard Frères & Co. LLC. on similar terms); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 8, 2008) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc. on similar terms); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Frères & Co. LLC and subjecting compensation to same standard of review); In re Trans World Airlines, Inc., No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); In re Covad Comm. Group, Inc., No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Lazard Frères & Co. LLC with compensation subject to standard of review set forth in section 328(a)); In re Harnischfeger Indus., No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors).

33. Likewise, similar indemnification arrangements have been approved and implemented in other large chapter 11 cases by courts in this district. See, e.g., In re Tropicana

---

[6] Because of the voluminous nature of the orders cited herein and in paragraph 33, they are not attached to the Motion. Copies of these orders are available on request of the Masonite Debtors' counsel.

Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 4, 2008); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000).

34. In light of the foregoing, and given the numerous issues that PWP may be required to address in the performance of its services hereunder, PWP's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PWP's services for engagements of this nature, the Masonite Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

II. **The Retention of PWP Is Critical to The Debtors' Success.**

35. Denying the relief requested herein would deprive the Masonite Debtors of the assistance of a highly qualified investment banker and financial advisor such as PWP and disadvantage the Masonite Debtors and all parties in interest. The Masonite Debtors would be forced to engage a new investment banker and financial advisor lacking the same understanding of the Masonite Debtors' businesses and restructuring initiatives. Forcing the Masonite Debtors to engage a new investment banker and financial advisor also would require additional time and resources. Accordingly, the Masonite Debtors respectfully submit that the services provided by PWP are critical to the success of the chapter 11 cases and request that the Court approve the Engagement Letter and Indemnification Provisions.

## Notice

36. The Masonite Debtors have provided notice of the Motion either by electronic mail or facsimile and by overnight mail to: (a) the U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims; (c) counsel to the agent for the Masonite Debtors' prepetition secured lenders; (d) the indenture trustee for the Masonite Debtors' senior subordinated notes; (e) counsel to the ad hoc committee of senior subordinated noteholders and (f) any persons who have filed a request for notice in the chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Masonite Debtors respectfully submit that no further notice is necessary.

## No Prior Request

37. No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein, in the Kramer Declaration, the Masonite Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: March 25, 2009
Wilmington, Delaware

/s/ Anthony D. DiLucente
Anthony D. DiLucente
Executive Vice President and Chief Financial Officer

16

K&E 13370136.36